# EXHIBIT B

AMERICAN ARBITRATION ASSOCIATION
COMMERCIAL PANEL
CASE NO. 01-18-0003-9231

TRUSTEES OF THE NEW YORK STATE NURSES ASSOCIATION PENSION PLAN,

      -v-                                Claimants,

WHITE OAK GLOBAL ADVISORS, LLC.,

                                          Respondent.

## FINAL AWARD ON MERITS/DAMAGES/ATTORNEYS' FEES AND COSTS

The merits of this matter were heard during a week-long proceeding, December 16, 2019, through December 20, 2019, and a Partial Final Award ("PFA") (attached) was issued by the undersigned arbitrator ("Arbitrator") on November 30, 2020, leaving the decision regarding the issues of Damages ("Damages") and Attorneys' Fees and Costs ("Fees and Costs") to be addressed thereafter in this instant Final Award ("FA"). The November 2020 PFA is hereby incorporated into this instant Final Award ("FA").

The parties submitted multiple briefs since the issuance PFA on November 30, 2020.  A single hearing via Zoom was held on June 17, 2021 solely for expert witness cross-examination testimony of their submitted reports as explained below.

## I.    PROCEDURAL MATTER

There is a significant threshold matter that the Arbitrator must address before deciding the substantive issues of damages and attorneys' fees/costs. The matter deals with the claims first raised by Respondent's then newly appointed co-counsel in January-February 2021, Sidley Austin, LLP ("Sidley"). The claims include *inter alia* that the Arbitrator engaged in major procedural due process violations, which had not been raised at any time by predecessor co-counsel

Greenberg Traurig P.C. ("Greenberg"), including actions that allegedly occurred during the pre-hearing, hearing stage, or immediate weeks after the issuance of the PFA.

With respect to the overall claim of lack of procedural due process, Sidley argues that the Arbitrator conducted the overall arbitration proceeding "[i]n a [m]anner that is patently unfair to White Oak pursuant to the AAA Commercial Rules." (Resp., May 24, 2021, e-mail letter to the Arbitrator at 1).  It must be noted that this assertion was raised for the first time nearly six (6) months after the issuance of the PFA on November 30, 2020.  Respondent also claims that the Arbitrator was, in sum and substance, prejudiced in favor of Claimant, without specifying which acts allegedly supported its claim. Respondent raises other alleged procedural irregularities.


The main category of alleged misconduct is the claim by Sidley that the Arbitrator extended deadlines on her own without requesting permission from the parties. The Arbitrator never acted on her own, as she contacted the AAA Director, who oversaw case management on this matter, to make her request for an extension of a deadline who then, in turn, would contact the parties to determine whether the Arbitrator's extension request was granted.   Requests were made long before the due dates to determine if there were any party objections to them. The AAA granted no extensions to the Arbitrator without first receiving their approval from the parties. The parties always granted the Arbitrator's requests. (Copies of the e-mails between AAA and the Arbitrator are available for review if needed).


Respondent also maintains that the Arbitrator had no authority to issue a partial final award. ("PFA").  Thus, Respondent claims, the PFA must be deemed improper and outside the scope of her authority under the IMA  or the AAA Commercial Rules. This contention is incorrect. The AAA Commercial Rules R-41

"Scope of Award," provides as follows: "In addition to the final award, the arbitrator may make other decisions, including interim, interlocutory, or partial rulings or orders and awards ..." Thus, the Rules do not confine the arbitrator only to the issuance of a final award, as argued by Respondent, as other forms of awards may be made, such as a partial final award, as was done here. Nor did the IMA confine the Arbitrator to the issuance of only a Final Award.

In addition, the Respondent has raised the claim that the Arbitrator's management of the proceeding caused a great deal of "time loss" in terms of moving the case to its conclusion.  A review of the various deadlines for the submissions that were produced prior to the issuance of the PFA demonstrates that the amount of time was necessary for the arguments being made by both parties as follows:

**TIMELINE: FINAL PARTIAL AWARD-PROCEDURAL MATTER**

| | |
|---|---|
| 12/16-12/20/19 | Hearing on the Merits |
| 3/31/20 | Respondent Submits Closing Brief |
| 2/14/20 | Claimant Submits Closing Brief |
| 3/31/20 | Respondent Submits a Reply Brief |
| 4/30/20 | Claimant Submits a Response Brief |
| 5/7/20 | Respondent requests permission to respond to certain matters in 4/30/20 Claimant Brief: Arbitrator grants request over Claimant's objection |
| 5/8/20 | Respondent requests permission to file a Sur-Reply Brief arguing Claimant raised new issues in latest brief: Arbitrator grants permission over objection of Claimant. |
| 5/25/20 | Claimant submits response to Sur-Reply Brief |

3

| 6/9/20 | Respondent objects to length of Claimant 's response Sur-Reply Brief |

6/9/20      Respondent objects to length of Claimant 's response Sur-Reply Brief

6/22/20      As per previous discussion during hearing, arbitrator e-mails memorandum to parties and AAA on this date, with the anticipated timeline for issuance of PFA as follows: "(1) anticipated review time of one (1) month to review transcripts/ exhibits/briefs/etc. (2) Ninety days (90) for the drafting of the partial final award which would be due on or before October 13, 2020. (Respondent notes that I refer to the "final award" in this e-mail which was a typographical error—it should have read "Partial Final Award")".  This e-mail was subject to the parties' approval and no objections were filed.

7/5/20      Arbitrator contacts AAA Director to apprise her of fact of her recent fall and hip injury that would require 4-6 weeks of therapy and recovery and impacts on anticipated due date of reasoned award on October 13, 2020.

8/11/20      AAA advises parties to have been contacted and have granted permission for Arbitrator to submit PFA on November 30, 2020.

11/30/20      Partial Final Award ("PFA") issued.

On December 20, 2020, Counsel for Claimant sent an e-mail letter to opposing counsel and the Arbitrator with a request that certain corrections be made to the PFA, pursuant to AAA Rule R-50.  The Arbitrator sent an e-mail dated that same day to Counsel for Respondent White Oak, to inquire whether Respondent would be submitting a response to Claimant's December 20, 2020, letter.

As noted by Respondent's Counsel Wozniak in his December 30, 2020, responsive email letter:

*"First, unless you tell us differently in a written communication,*
*Respondent does not interpret your Partial Final Award to be a*

*Final Award.  Because the Partial Final Award is not the Final*
*Award, Rule R-50 is not the proper procedural mechanism for*
*requesting changes to the Partial Final Award ...  (Internal citation*
*omitted) ... If it is your intention that your Partial Final Award is in*
*fact a Final Award triggering the time within which a motion*
*to vacate must be filed, please advise the parties in writing*
*of that intention."*  Second, Rule R-50 allows for the corrections of
"clerical, typographical or computational error in an award.  It does
not allow the arbitrator to change the meaning of sentences or entire
paragraphs in an award ... [or] allow Petitioner to advocate for its
construction of the award..." (Emphasis added) (12/30/20 Letter
from Counsel Wozniak to Arbitrator).

The Arbitrator confirmed by e-mail dated December 30, 2020, that the award
was a "Partial Final Award" and not a "Final Award." Thus, the parties were in
receipt of the clarification that the PFA was not final, and it would lead to the
second part of the proceeding dealing with damages and attorneys' fees and
costs.

Moreover, under AAA Commercial Rule R-41, "Waiver of Rules," "any party who
proceeds with the arbitration after knowledge that any provision or requirement
of these rules has not been complied with and who fails to state an objection in
writing shall be deemed to have waived the right to object."  Respondent
proceeded with this instant arbitration without stating an objection in writing to
its continuance following the issuance of the December 30, 2020, clarification
that the Partial Final Award was not a Final Award. Respondent must be deemed,

therefore, as having waived the right to object to that fact, pursuant to Rule R-45.[1]

Respondent's arguments that the Arbitrator committed a procedural error when she addressed the issues of this case in two steps, by first deciding the case on the merits and then moving on to damages and attorneys' fees and costs, is without foundation.  The Arbitrator cannot issue any final decision without first affording the parties the opportunity to submit either closing oral arguments on the issues, which was not done in this case, or to submit written briefs, which they chose to do, given the size of the record and the complexity of the subject. Clearly, the Arbitrator could not have made any decision on the overall matter until first hearing from the parties as to their respective positions.  Furthermore, it is common practice for arbitrators to allow the parties to submit written briefs in lieu of oral closings if there is joint agreement to do so, which was the case in this matter.

**TIMELINE: POST-PFA-PROCEDURAL MATTER**

The reasons governing the finding that Respondent must disgorge all assets, and some fees, and profits, are more fully set forth in the Partial-Final Award of November 30, 2020 ("PFA") (appended) and will not be repeated in this section, excepting a few points, as the focus will be on the actual computation of the damages amount due, less offsets if any, along with the attorneys' fees and costs.

As noted in the PFA, this Arbitrator attempted to establish the process for the disgorgement of funds.  She held as follows:

---

[1] AAA Commercial R-41. Waiver of Rules : Any party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with and who fails to state an objection in writing shall be deemed to have waived the right to object.

*The Order*: "[I]n order to develop an accurate account of the scope of the damages, however, an ERISA attorney or accountant shall be jointly selected by the parties and, if unable to do so, by this Arbitrator, at the parties joint expense, with jurisdiction retained by this Arbitrator over the collateral proceeding, to review all aspects of the funds that will be subject to the actions set forth below as a result of the prohibited transactions and/or breaches of fiduciary duties under the IMA and ERISA."

Respondent refused to participate with this aspect of the Order, arguing that "[i]t objected to the remedy and that an AAA arbitrator does not have the power or authority to appoint an expert to determine damages because such authority is limited by the parties' IMA and the AAA rules, neither of which provide such authority.  If the Arbitrator makes such an appointment, her award would be subject to a vacatur in federal court for acting outside the scope of her authority, citing *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013)."

Respondent argues that "[t]he AAA rules do not permit an arbitrator to engage an expert to "assist" the arbitrator in the making of a decision "[m]uch less to offload that authority to an "expert" to conduct an "inquest" requiring damages." Respondent avers that it "understood the Award to allow White Oak to make an in-kind distribution of the Plan's investments to the Trustees" and that Claimant was also requesting an explanation of the remedy, as the Claimant set forth in its December 20, 2020, letter to the Arbitrator.

However, AAA Commercial Rule R-45 provides the authority to an arbitrator to select an investigator to work under her control, which was the original directive to the parties in the PFA with respect to disgorgement.  In addition, AAA Rule R-36 provides the authority to an arbitrator to call for an inspection or investigation of any aspect of the case, again under her direction and control.  These two AAA rules support her

ruling of ordering an inspection of Respondent's books, which Respondent refused to follow.

Moreover, given the lack of compliance on Respondent's part with the Order, and the comments from both parties that they had retained experts, the Arbitrator directed an additional day of hearing via Zoom, to hear the testimony of these expert witnesses who aided their clients with the calculation of damages and to provide the opportunity for cross-examination of these witnesses.  It was decided that experts prepared written reports would serve as the direct examinations of the witnesses at the hearing. Claimant retained John Simon of Cornerstone Research, while Respondent retained John Ciancanelli of Ankura Consulting Group, LLC., both experienced in the field of business valuation.

The Arbitrator directed the parties to select a mutually agreeable date for the cross-examination of their expert witnesses, with the parties retaining all rights to any objections that may have been raised during the post-PFA time frame. This expert witness hearing occurred on June 17, 2021, and a stenographic record was maintained. Two (2) weeks later, on July 1, 2021, the parties served final brief-letters concerning the expert testimony and/or comments on the case.

**DAMAGES AND ATTORNEY FEES AND COSTS**

The findings in the PFA were "partial" in that all evidence had not been presented concerning several areas, as evidenced by the subject matter of the arguments contained in the briefs post-PFA.  Also, both parties presented expert witnesses on the issue of damages, which clarified the questions presented, especially around the applicability of statutory construction.  As a result, there are certain areas of the PFA that have been modified to update the award, to reflect the evidence revealed throughout the briefing and the experts presented during the post-PFA period.

That evidence demonstrates that White Oak unsuccessfully attempted in

writing to return the Funds to the Plan after the 6-month holding period. White

Oak notified the Plan it would continue investing the money in the same

manner and for the same charges as before and until such time that the Plan

advises White Oak of its successor investment manager or when it is ready to

receive the funds itself.  White Oak should not be penalized for the Plan's lack

of action in notifying the Fund that it had a new investment manager or some

other means of handling its funds, though it was clear that it was unhappy with

White Oak at that time.

This Arbitrator realizes that the Claimant has argued that the Award's words

"the Plan must be granted the NAV of its investments" to mean that the NAV

value will be in cash.  This Arbitrator never ordered in her PFA that the Final

Award requires all cash damages.  Section 13 (b) of the IMA requires White Oak

to transfer to the Plan "all books, records, accounts, cash, securities (and other

evidence of ownership) and all other property of the Trustees and the Plan in

the Investment Manager Possession" and to "facilitate the transition of the

Investment Account to the management of the Trustees [or] another

investment manager appointed by the Trustee."   Moreover, Section 13--- of

the IMA allows White Oak to make new investments on behalf of the Plan even

after receiving a termination notice.

"[T]he list of those items to be returned to the Plan included 'cash.' Nonetheless, it is irrelevant

whether the 'cash' to be returned is currently encumbered by White Oak's or the clients or is not

readily available as is it not the Plan's burden to locate the source of such funding.  The IMA makes clear that both sides contemplated a possible return of 'cash' within a 30-day period following a unilateral termination, such as here, and White Oak must find a way of meeting its contractual obligations regardless if it takes the form of a market rate loan or other legal means. Any argument by White Oak that requiring the return of the Plan's funds would result in a foreclosure on borrowers was rebutted by White Oak Managing Partner McKee's testimony at the hearing that such an action "[i]s not the only way for White Oak to get the money." PFA 18-19.

In sum, the Arbitrator reviewed all the briefs and testimony since the issuance of the PFA and issued the following:

AWARD

1. The PARTIAL FINAL AWARD dated November 30, 2020 is hereby incorporated within this FINAL AWARD.

2. WHITE OAK shall disgorge the NAV of the Plan, which may not include all cash, as of date of this FINAL AWARD. Disgorgement, including interest, shall take place no later than 30 calendar days after the issuance of this Award unless the parties agree otherwise.

3. PERFORMANCE FEES shall be retained by White Oak and not be returned to the Plan as they constitute reimbursement for managing the business and affairs of Pinnacle and Summit, rather than profits of White Oak.

4. ATTORNEYS' FEES AND COSTS as proposed by the Plan, shall be reduced by 20% since the Plan did not prevail on all claims, notably the Most Favored Nation claim.  No interest shall be paid with respect to attorneys' fees and costs owed.  Payment of attorneys' fees and costs shall be rendered no later than 30 calendar days from this AWARD.

5.  PRE-JUDGMENT INTEREST is awarded at the New York statutory rate of 9%.

6.  The TOTAL of all Plan assets as of May 19, 2021 is $96,213,778.83.

7.  The administrative fees and expenses of the American Arbitration Association totaling

    $40,600.00 are to be borne $20,300.00 by the New York State Nurses Association Pension

    Plan and $20,000.00 by the White Oak Global Advisors, LLC.

8.  The compensation of the Arbitrator totaling $169, 325.00 shall be borne equally.

9.  All claims not expressly granted herein are DENIED.

STATE OF NEW YORK            )

COUNTY OF NEW YORK           )

I, Rosemary A. Townley, do hereby affirm upon my oath as Arbitrator that I am the

individual described  herein and who faithfully executed this instrument, which is my

FINAL AWARD.

Date: August 4, 2021
Location: New York, NY

On this 4th day of August, 2021, before me personally came and appeared *Rosemary Townley*
to me known and known to me to be the individual described in an d who executed
the foregoing instrument and he/she acknowledged to me that he/she executed the
same.

Notary Public

HOWARD C. EDELMAN
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02ED6412917
Qualified in New York County
Commission Expires January 11, 2025